IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| Nathaniel Gaither, | ) C/A No. 5:11-953-CMC-KDW |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
|  | ) Report and Recommendation |
| United States of America, | ) |
| Defendant. | ) |

Plaintiff, a federal prisoner proceeding pro se, brought this action pursuant to the Federal Torts Claims Act ("FTCA").[1] This matter is before the court on the motion for summary judgment filed by Defendant on October 24, 2011. ECF No. 39. The court entered a *Roseboro* order[2] on October 25, 2011, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 41. Plaintiff responded to Defendant's motion on November 16, 2011, making this motion ripe for consideration. ECF No. 43. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation is entered for the court's review.

I. Background

*Complaint and Amended Complaint*

In his Complaint, Plaintiff alleges he was not provided medical treatment for his pre-existing physical and mental conditions. ECF No. 1. He alleges that on February 22, 2001, the court in his criminal case ordered a psychiatric/psychological evaluation pursuant to 18 U.S.C.

---

[1] 28 U.S.C. § 1346 and 28 U.S.C. § 2671 *et seq.*
[2] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

§§ 4241 and 4247, and he was sent to the Federal Medical Center in Devens, Massachusetts ("FMC Devens"), for the evaluation but it was never done. *Id.* at 2. He claims that, instead of being evaluated, he was tortured and not provided any medical treatment. *Id.* at 2-3.

Plaintiff alleges members of the staff at the Federal Correctional Institution in Marianna, Florida ("FCI Marianna") were negligent by giving Plaintiff the wrong medication, which resulted in his being sent to a local hospital. *Id.* at 3. He contends that, as of April 13, 2011, nothing has been done for his back and very little for his thyroid condition. *Id.* Plaintiff also alleges that, because prison officials send him to another prison when he needs medical treatment to avoid treating him, his pre-existing injuries have worsened, which will probably require extensive mental and physical therapy, and in all probability he will have a permanent disability. *Id.* at 4. In his Amended Complaint, Plaintiff alleges staff at the Federal Correctional Institution in Estill, South Carolina ("FCI Estill") are trying to deter him from filing the appropriate documents for his tort claims by removing legal tort law books and copy machines from the library and tampering with his legal mail.[3] ECF No. 18.

---

[3] Prior to Defendant's response to the Complaint and Amended Complaint, Plaintiff filed a motion to amend/correct the Amended Complaint. ECF No. 35. The court denied the motion, ECF No. 47, but has considered Plaintiff's allegations in addressing Defendant's motion for summary judgment. In his motion to amend, Plaintiff acknowledges he received a response from the Southeast Regional Office to his third administrative tort claim. ECF No. 35 at 1. However, he claims that, when he received the envelope, it was already opened, the letter was not from the Regional Counsel Lisa Sunderman, and the contents within the letter were fabricated. *Id.* He contends the denial of the administrative claim should be consolidated with this action. *Id.* at 2. In his proposed Second Amended Complaint, he alleges he was seen by a neurologist for his back in 2003 who wanted to do surgery, but the clinical director denied Plaintiff any treatment for his back, including the surgery. ECF No. 35-1 at 4. He states the tort claim response from the Regional Office indicated he was non-compliant with his medication, but he alleges his prostate medication is the only one he does not take because he was told his prostate was normal. *Id.* at 5-6.

*Administrative Claims*

### TRT-BOP-2011-01029[4] and TRT-NER-2011-01978

The first recorded administrative tort claim was filed by Plaintiff on November 13, 2010 and received by the Bureau of Prisons ("BOP") on November 24, 2010; this claim was designated TRT-BOP-2011-01029 ("Claim #01029"). ECF No. 39-3. In this claim, Plaintiff alleged an injury occurred on February 22, 2001 when he failed to receive a psychological/psychiatric evaluation pursuant to 18 U.S.C. §§ 4241 and 4247 as ordered by the magistrate judge in his criminal trial. *Id.* at 1. He stated that, on December 19, 2003, the sentencing court received a letter from the United States Department of Justice questioning the credibility and accuracy of an evaluation conducted by Dr. Thomas Patenaude. *Id.* at 2. He contended his constitutional rights were violated and that "[t]his is a part of the continuing wrong doctrine because of being convicted without an evaluation." *Id.* He also stated he filed a civil complaint in 2001 when he returned from FMC Devens, which stated everything he had been through, but his complaint was denied as frivolous. *Id.*

On December 6, 2010, Lisa Sunderman ("Sunderman"), Regional Counsel for the Southeast Regional Office, returned Plaintiff's tort claim and informed him his claim was not accepted for filing because the alleged incident date—February 22, 2001—was clearly beyond the two-year statutory time limit and was thus time-barred. ECF No. 39-4. Sunderman also informed Plaintiff that if he had any documentation indicating that he properly presented his claim within the statutory two-year time period, he should forward it to Sunderman's office. *Id.*

On December 21, 2010, Plaintiff wrote a letter to Sunderman, resubmitting his claim. ECF No. 39-5. Plaintiff argued the limitations period should not begin to run until "the end of

---

[4] This claim was also referred to as TRT-NER-2011-01029. *See, e.g.*, ECF No. 39-2 ¶¶ 10–11.

the episode in the suit," i.e., after his release from incarceration. *Id.* at 1. After discussing case law concerning the continuing wrong doctrine, he concluded that "the limitation period should start upon release of incarceration, and this is a case of the continuing wrong doctrine/ continuing TORT." *Id.* at 2. On December 24, 2010, Plaintiff sent Sunderman a letter regarding his resubmission. ECF No. 39-6. In this letter, he quoted the definition of "accrual" and argued that, because he is in prison without having had an evaluation and, therefore, a fair trial, his emotional distress from being in prison without being evaluated first accrues throughout his imprisonment. *See id.*

Because the alleged loss/injury occurred in a facility located within the Northeast Region, on January 20, 2011, Sunderman forwarded the administrative tort claim and correspondence from Plaintiff regarding Claim #01029 to Hank Sadowski ("Sadowski"), Regional Counsel for the Northeast Regional Office. ECF No. 39-8. Sunderman also sent a letter to Plaintiff informing him she had referred his claim to the Northeast Regional Counsel and all future correspondence should be directed to that office. ECF No. 39-9.

On February 11, 2011, Sadowski sent Plaintiff a letter acknowledging receipt of Claim #01029. ECF No. 39-10. On the same day, Sadowski also sent Plaintiff a letter acknowledging receipt of a second tort claim filed by Plaintiff relating to the February 22, 2001 psychological/ psychiatric evaluation. ECF No. 39-11. This tort claim was designated TRT-NER-2011-01978 ("Claim #01978"), *id.*, and Claim #01029 and #01978 were determined to be the same claim, ECF No. 39-2 at 10; *see also* ECF No. 39-12 at 1 (noting claims were the same).

On February 16, 2011, Plaintiff sent Sadowski a letter referencing both tort claims, Claim #01978 and #01029. ECF No. 39-12. Plaintiff stated his claim was about not receiving the

4

evaluation for which he was sent to FMC Devens on February 22, 2001, and he argued that, because he was still incarcerated, the continuing wrong doctrine applied such that the limitations period had not yet begun. *Id.* at 1-2. The last sentence of his letter read, "Sir, could you please stop Estill from tampering with the mail." *Id.*

On February 22, 2011, Plaintiff sent the Northeast Regional Office another letter, referencing both Claim #01978 and #01209 and increasing his claimed damages. ECF No. 39-13. Plaintiff stated that on November 13, 2010, when he filled out his first administrative claim form, he did not have adequate legal materials and that now he was increasing the amount of his claim for (1) the intentional infliction of emotional distress due to his wrongful imprisonment and (2) continuing constitutional violations. *Id.*

On March 3, 2011, Plaintiff sent a letter to Sadowski referring to Claim #01978 and #01029 and alleging staff at FCI Estill were tampering with his legal mail, thus continuing his wrong. ECF No. 39-14. On March 5, 2011, Plaintiff sent another letter in which he again increased the amount of damages in Claim #01978 and #01029. ECF No. 39-15. He alleged the administration at FCI Estill was trying to deter Plaintiff from filing the appropriate legal tort documents to the courts by removing all law books concerning tort law from the law library and removing the copy machine. *Id.* at 1. Further, he stated that, as a result of the negligence of BOP staff, he "ha[d] also been denied adequate medical treatment, all stemming from the principal of not having psychological/psychiatric evaluation, and back pain from pre-existing physical condition that has wors[]en[ed]." *Id.*

On March 31, 2011, Sadowski sent Plaintiff a denial of the claim, referring to the claim by the original number assigned to it, Claim #01029. ECF No. 39-7. Sadowski explained

Plaintiff's claim was denied because (1) it contained allegations of constitutional violations, which are not compensable under the FTCA and (2) Plaintiff failed to submit his claim within the time restrictions contained in the applicable statute of limitations. *Id.* at 1.

TRT-SER-2011-02376

On January 10, 2011, Plaintiff submitted a third administrative tort claim, which Sunderman received on February 10, 2011. ECF No. 39-16. In this claim, designated TRT-SER-2011-02376 ("Claim #02376"), Plaintiff stated the basis of his claim was negligent supervision and failure to provide medical treatment from January 1, 2001 to the present. *Id.* at 1. Plaintiff stated he sustained personal injuries including pain, suffering, and emotional distress for not having an MRI or being seen by a neurologist since 2003 for a pre-existing physical condition, which has worsened because of the BOP's failure to provide medical treatment. *Id.* Plaintiff alleged he had degenerative disc disease before his incarceration in 2001 and his condition had worsened such that he now had an overactive bladder and pain in his upper and lower back, hips, and down the back of his leg. *Id.* at 3. Plaintiff also alleged he had seen two urologists instead of a neurologist and had not received medication prescribed by the last urologist. *Id.* at 3-4. Plaintiff alleged his condition and injuries was caused by the negligence of BOP staff and constitutional violations. *Id.* at 5.

On February 23, 2011, Sunderman sent a letter to Plaintiff returning his tort claim because it was time-barred as of January 1, 2003. ECF No. 39-17. Sunderman also informed Plaintiff that, if he had any documentation indicating he properly presented his claim within the two-year statutory time period, he should forward such documentation to her office. *Id.*

On March 8, 2011, Plaintiff wrote Sunderman two letters regarding Claim #02376. ECF Nos. 39-18, 39-19. In both letters, Plaintiff stated that on January 1, 2001, he had a pre-existing condition, and on November 14, 2010, he was diagnosed with inflammation of the bladder. *Id.* He stated that, therefore, November 14, 2010 was the date of the incident. *Id.* Plaintiff also stated it appeared Sunderman was working in conjunction with the administration at FCI Estill to deter Plaintiff from "going on with this claim, not knowing what the word accrual means." *Id.* Plaintiff again stated his case was one of a continuing wrong, and he threatened to file a new claim in the Northeast Region adding Sunderman's name as trying to deter him. *Id.* Plaintiff closed the letters by saying he would be in court. *Id.*

On March 10, 2011, Plaintiff submitted a new claim form, amending the date of incident to November 14, 2010 and increasing the amount of damages. ECF No. 39-20. On April 26, 2011, Sunderman sent Plaintiff a letter acknowledging her office's receipt of Plaintiff's correspondence and advising Plaintiff of the regulatory time frame for the agency's final disposition of Claim #02376. ECF No. 39-21. On September 20, 2011, Craig Simmons, acting for Sunderman, signed a letter denying Plaintiff's tort claim. ECF No. 39-22; *see* ECF No. 39-23. The letter informed Plaintiff his claims prior to March 11, 2009 were time-barred. ECF No. 39-22 at 1. The denial letter also set forth that there was no evidence FCI Estill medical staff, in supervising or in providing medical care to Plaintiff, caused him pain, suffering, or emotional distress and/or caused his pre-existing back injury to worsen. *Id.* at 3. Moreover, the denial letter explained that, to the extent Plaintiff alleged the failure of medical staff at FCI Estill to arrange or schedule an MRI for him or to have him seen by a neurologist for degenerative disc disease in his lower back amounted to deliberate indifference to his medical needs and violated

his constitutional rights, such claim was not compensable under the FTCA. *Id.* at 4. Finally, the denial letter stated the record demonstrated Plaintiff was provided evidence-based, proven effective medical care in accordance with approved policies. *Id.* at 5.

II. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III. Analysis

*Psychiatric/Psychological Evaluation and Medical Treatment Claims*

Under the well-established legal doctrine of sovereign immunity, the United States, its departments, and its agencies cannot be sued without their express consent. *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). In accordance with the doctrine of sovereign immunity, an action against the United States may be maintained only when it has expressly consented to being sued. *See Welch v. United States*, 409 F.3d 646, 650-51 (4th Cir. 2005). When the United States waives its sovereign immunity, the terms of its waiver define the extent of a court's jurisdiction and a court may not extend or narrow the waiver beyond that intended by Congress. *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979).

One of the few areas in which the United States waives its sovereign immunity is in the area of torts allegedly caused by government officials or employees; under the specific and limited circumstances outlined in the FTCA, an injured party may sue the United States for damages allegedly caused by employees of an agency such as the BOP. *See id.*; *Kielwien v.*

*United States*, 540 F.2d 676, 679 (4th Cir. 1976). The FTCA requires that an administrative claim be presented to the appropriate federal agency before commencement of a civil action in a federal district court. 28 U.S.C. § 2675; *see also* 28 C.F.R. § 14.2 (detailing what is required to properly present a claim under the FTCA). Further, the administrative claim must be presented to the appropriate federal agency within two years after the claim accrues or the claimant is barred from recovering from the United States. 28 U.S.C. § 2401(b). If the claimant proceeds to court, it is his burden to prove he satisfied all the conditions precedent to filing a lawsuit. *See Welch*, 409 F.3d at 651 (citation omitted); *Kielwien*, 540 F.2d at 679. Because an action is not within the bounds of the United States' waiver of sovereign immunity if it does not strictly comply with the FTCA, if the claimant fails to satisfy all the conditions precedent, the court lacks jurisdiction over the action. *See Mitchell*, 463 U.S. at 212; *Medina v. United States*, 259 F.3d 220, 223-24 (4th Cir. 2001) (stating the FTCA represents a limited congressional waiver of sovereign immunity and a court must be assured that Congress has waived sovereign immunity for the circumstances presented to the court; otherwise, the court lacks jurisdiction over the case).

Here, the court lacks jurisdiction over Plaintiff's claim with respect to his allegations concerning the 2001 psychiatric/psychological evaluation and the lack of an MRI and neurologist visit since 2003 because he did not file an administrative claim within the two-year statute of limitations for tort claims against the United States. Plaintiff readily acknowledges these claims arose more than two years before Plaintiff filed any administrative claim concerning his allegations. *See, e.g.*, ECF No. 1 at 2 (stating that in 2001 he was sent to FMC Devens for an evaluation pursuant to 18 U.S.C. §§ 4241, 4247, but he was never evaluated); ECF No. 43 at 1

(stating psychiatric/psychological evaluation was ordered but not received in 2001), 2 (stating medical treatment was denied at various facilities beginning in 2002).[5] Nonetheless, Plaintiff argues that the continuing wrong doctrine applies to his claims and that his claims have continued to accrue, *see, e.g.*, ECF No. 43 at 11–18. However, Plaintiff is mistaken as to the application of the continuing wrong doctrine and when his claims accrued.

A claim accrues when it arises—that is, when it comes into existence as an enforceable claim. "Accrue," *Black's Law Dictionary* (9th ed. 2009). Thus,

> A limitations period generally begins to run when facts exist that authorize one party to maintain an action against another. However, under the continuing tort or "continuing violation rule," where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date on which the tortious acts cease.
> In cases in which the parties plead as a single continuing event a series of distinct events, each of which gives rise to a separate cause of action, the "continuing claims doctrine" operates to save the later arising claims, even if the statute of limitations has lapsed for the earlier events. The continuing claims doctrine does not apply, however, to a claim based on a single distinct event which has ill effects that continue to accumulate over time.

54 C.J.S. *Limitations of Actions* § 132 (2012) (footnotes omitted).

As stated above, Plaintiff acknowledges his mental evaluation and medical treatment claims arose in 2001 and 2003, respectively. Plaintiff also acknowledges that these claims are based on single distinct events—failure to conduct a mental evaluation in February 2001 and

---

[5] Plaintiff also acknowledges that in 2001 he filed a civil complaint concerning what did or did not happen at FMC Devens and addressed the alleged evaluation in his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. *See* ECF No. 1 at 3; ECF No. 43 at 11–12; *see also* ECF No. 39-26 (docket sheet for Plaintiff's 2001 civil case). Plaintiff's § 2255 petition was filed in 2004 and denied in 2005. ECF Nos. 39-27, 39-28 (order denying § 2255 petition and docket sheet for that action). Thus, the record suggests Plaintiff knew he had a claim with respect to the alleged evaluation, or lack thereof, as early as 2001 or at least as early as 2004. Either way, Plaintiff's administrative claims filed in 2010 were filed outside of the two-year limitations period.

failure to take Plaintiff for an MRI or to the neurologist in 2003—that have ill effects that have accumulated over time—(1) he stood trial even though he did not receive a mental competency evaluation and he is in prison as a result of that trial, and (2) without an MRI or an evaluation by a neurologist, he has not received appropriate medical treatment. *See, e.g.*, ECF No. 43 at 6 (stating the lack of a psychiatric/psychological evaluation violated Plaintiff's constitutional rights and that "[t]he plaintiff has also been denied adequate medical treatment all stemming from the principal of not having a psychological/psychiatric evaluation, and back pain from pre-existing physical condition that has wors[]ened"). Therefore, to timely present his claims under the applicable statute of limitations, Plaintiff would have had to present his mental evaluation claims to the BOP by 2003 and his medical treatment claims by 2005. Thus, his administrative claims filed in 2010 and 2011 with respect to these allegations were untimely, and Plaintiff's failure to timely present his claims deprives the court of subject matter jurisdiction over his claims.[6]

---

[6] To the extent Plaintiff has stated a claim of negligent medical treatment that was timely presented to the BOP, *see* ECF Nos. 39-18, 39-19, 39-20 (amending date of Claim #02376 to November 14, 2010), Defendant's Motion for Summary Judgment should be granted on such claim because Plaintiff has failed to demonstrate a genuine issue of material fact remains as to such claim. For purposes of the FTCA, the United States' liability is determined by applying the law of the place where the act or omission occurred, 28 U.S.C. § 1346(b)(1); to the extent he has presented a timely claim, Plaintiff has presented a negligence claim based on the medical treatment he did or did not receive at FCI Estill, South Carolina. In South Carolina, "[t]o establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000). "A breach of duty exists when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed." *Horne v. Beason*, 331 S.E.2d 342, 344 (S.C. 1985). Further, to warrant recovery, the claimant's alleged damages must have been proximately caused by the breach of duty. *Id.*

Here, the administrative denial of his claim indicates Plaintiff was seen by prison medical staff for regular visits and upon Plaintiff's complaints of pain or ailments; Plaintiff was seen by an outside urologist for bladder problems; Plaintiff received medications for his various ailments; prison staff accommodated Plaintiff's medication changes to the extent they were able to; and Plaintiff often refused to take his prescribed medications. ECF No. 39-22; *see also* ECF No. 35-3 (medication summary provided by Plaintiff revealing Plaintiff was prescribed numerous

*Legal Mail, Law Books, and Copy Machine Claims*

To the extent Plaintiff has stated a claim based on prison staff tampering with his legal mail, removing law books from the library, and removing the copy machine, *see* ECF No. 18, his claim should be dismissed because the claim is not actionable under the FTCA. As the Fourth Circuit has stated, "because the 'law of the place' encompasses state law, but not federal law, a federal constitutional tort cannot provide the source of law under the FTCA." *Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994)); *see also Washington v. Drug Enforcement Admin.*, 183 F.3d 868 (8th Cir. 1999) (holding that because the basis for liability under the FTCA is the law of the state in which the act or omission occurred, the plaintiff's claims of Fourth, Fifth, and Fourteenth Amendment violations stemming from a DEA search could not be remedied through the FTCA). In other words, as made explicit by its text, the FTCA's limited waiver of sovereign immunity extends no farther than the limits of private tort liability. 28 U.S.C. § 2674. Here, Plaintiff has failed to identify this claim as sounding in tort; rather, his allegations suggest he has framed this claim as a constitutional one. *See, e.g.*, ECF No. 18 at 1 (stating Plaintiff received mail from this court that was already opened, suggesting he claims prison staff has violated his constitutional right to redress of grievances and/or access to courts). Because there is no waiver of immunity for claims of constitutional violations by federal officials under the FTCA, Plaintiff's assertions of constitutional violations are not cognizable under the FTCA and must be dismissed.

---

medications). Plaintiff has failed to present any evidence other than his own conclusory statements that this treatment, or any alleged lack of treatment, was foreseeably likely to injure him. Moreover, Plaintiff has failed to demonstrate how any injury he sustained is causally connected to the alleged negligent treatment or lack of treatment. Therefore, Plaintiff has failed to demonstrate a genuine issue of material fact remains as to any medical treatment claim that has been properly presented to the BOP.

IV. Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant's Motion for Summary Judgment, ECF No. 39, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

July 17, 2012
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**